BLOSSOM (FOX v.). See Case No. 5,008.

---

## Case No. 1,565.

BLOSSOM et al. v. SMITH et al.

[3 Blatchf. 316.] [1]

Circuit Court, S. D. New York. Oct. 1, 1855. [2]

CARRIERS—BILL OF LADING—DELIVERY OF CARGO —CUSTOM AND USAGE.

Resin is not permitted to be stored in the city of New York. It is the usage, in New York, that, when a vessel arrives there with a cargo of naval stores, such as resin, consigned to different houses, the house to which the largest consignment is made, has a right to select the yard, in Brooklyn, at which the cargo shall be delivered, and all the other con-

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

[2] [Reversing decree of the district court in Case No. 1,566.]

signees are bound to take their consignments at the same yard. Where, in such a case, the largest consignee selected a yard in Brooklyn, but the owner of that yard would not permit the libellant's resin to be landed there, because of some personal difficulty with him, and not for any fault of the master or owner of the vessel; and the master notified the libellant and requested him to send lighters to take his resin from the vessel, but he refused; and the master then sent the resin to a yard in Brooklyn: *Held*, that the master discharged his whole duty, and that no action would lie against the owner of the vessel for a failure to deliver according to the bill of lading.

[Cited in The Mary E. Taber. Case No. 9,209; Devato v. 823 Barrels of Plumbago, 20 Fed. 518.]

[Appeal from the district court of the United States for the southern district of New York.]

In admiralty. This was a libel in personam [by Benjamin Blossom and Charles J. Blossom against Jonas Smith and Paul Hulse], filed in the district court, to recover the value of a quantity of resin. After a decree in that court in favor of the libellants [Case No. 1,566], the respondents appealed to this court. [Reversed.]

Erastus C. Benedict, for libellants.

Daniel Lord and John E. Burrill, Jr., for respondents.

NELSON, Circuit Justice. The resin in question in this case was shipped at Wilmington, North Carolina, in a vessel belonging to the respondents, and was consigned to the libellants. There were several other consignments of resin by the same vessel. She arrived at New York on the 20th of May, 1853, and hauled over to Mitchell's yard, at Brooklyn, to land her cargo, where the different consignments of resin were delivered, except that consignment to the libellants. The agent of Mitchell refused to permit this consignment to be landed at that yard. The libellants were notified of this by the master, and were requested to send lighters to receive the resin from the vessel. This they refused to do, and required that it should be delivered at a yard belonging to themselves, in Brooklyn, about a mile and a half from Mitchell's, or at some other yard there where naval stores were received. The master then hauled over to the vessel's own pier, in New York, and notified the libellants of his readiness to deliver the resin there. They refused to receive it there. Resin is not permitted to be stored in the city of New York. The master then sent the article, in lighters, to a public yard in Brooklyn, and notified the libellants, and tendered to them the receipt given to him at the yard for its delivery, and demanded the freight, including the expense of lightering. The libellants tendered the freight, excluding the lighterage, and demanded the resin.

According to the usage of the trade, when a vessel arrives with a cargo of naval stores, such as resin, consigned to different houses in New York, the house to which the largest consignment is made has the right to select the yard in Brooklyn at which the cargo shall be delivered, and all the other consignees are bound to take their consignments at the same yard. The master is not obliged to deliver each consignment at any yard which its consignee may choose to select, or to go from yard to yard for the purpose of making a delivery.

In this case, the consignee of the largest quantity selected Mitchell's yard. The agent of Mitchell, however, refused to permit the libellants' resin to be landed there, as he had a right to do, for aught that appears. It seems that some personal difficulty existed between the owner of the yard and the libellants, and that orders had been given not to allow any consignment to their house to be landed there. The question is—what was the duty of the master, under such circumstances? He had complied with the usage, so far as was in his power, and was ready to land the goods in conformity to it, but was met by a refusal to permit the landing of this part of his cargo. The usage did not require him to land the article at any other place, but did require that he should have it at that particular place ready to be delivered. It seems to me that. unless the fault which led to the refusal of the owner of yard was attributable to the master or owner of the vessel, the only further step required of the master, in justice or fair dealing, was taken by him in this case, namely, to notify the consignees, so that they might either provide for the landing of the article at the place designated by the usage, or send lighters to receive it from the ship.

The usage, if of any force or obligation, plainly enough implies that the consignee shall provide for the landing at the place it designates. Otherwise, it would fluctuate according to the caprice or passions of the owner of the yard selected in pursuance of it, and the master be left without guide or direction in the matter.

The case in hand is still stronger. The refusal to permit the landing arose from an exception taken to the conduct of the libellants. No exception was taken to the master or the owner of the vessel. or to their conduct in the matter. And yet, it would seem, from the claim of the libellants, that, in some way or other, the master or owner should be held responsible for the consequences. The claim is neither generous nor just. Nor do I think it the legal result flowing from the circumstances of the case.

It is said, that the master was bound to deliver the goods to the consignees, in order to discharge himself from the obligation in the bill of lading. But this must be according to the usage of the trade. That required him to deliver the goods at Mitchell's yard. They were taken there ready to be delivered. and no one was ready or willing to receive them. After notifying the consignees of the fact, it was their duty to provide a place

there, or receive them from the ship; and, on a refusal, any expense to which the ship was subjected, in the further steps to provide a place, was at their expense. This was not a case where the vessel could select her own dock or place of landing—the one where she was accustomed to deliver her goods, and which her owner provided.

I think that the court below erred, and that the decree should be reversed, and the libel be dismissed, with costs.